### In re STAUFENS MUSIC HOUSE, INC., Debtor.

### Bankruptcy No. 97–49035–172.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Sept. 22, 1997.

---

Peter D. Kerth, Gallop, Johnson & Neuman, Clayton, MO, for Debtor.

Timothy M. Bosslet Kathryn Klein Kramer & Frank, P.C., St. Louis, MO, for Whirlpool.

A. Thomas DeWoskin Greensfelder, Hemker & Gale, P.C., St. Louis, MO, for Baxter–Clarkson.

Wendi S. Alper–Pressman, Vincent Vogler & Associates, St. Louis, MO, for Unsecured Creditors.

## ***ORDER***

JAMES J. BARTA, Chief Judge.

This matter concerns the application of Staufens[1] Music House, Inc. ("Debtor") to retain Direct Connections, Inc. to conduct a Going Out of Business ("GOB") sale of the Debtor's piano and other inventory; and the Debtor's motion for authority to sell assets. At the conclusion of an expedited hearing on September 18, 1997, the Court announced its determinations from the bench.

This is a core proceeding pursuant to Section 157(b)(2)(M) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334, and Rule 9.01 of the Local Rules of the United States District Court for the Eastern District of Missouri.

The Debtor filed a petition for relief under Chapter 11 on September 17, 1997 and requested an emergency hearing on the above motion and application. Notice of its requests and the date and time of the hearing was given by telephone or by fax to the United States Trustee, to the secured creditors, to the twenty largest unsecured creditors, and to other entities as the Debtor deemed appropriate,. including the Debtor's landlord under an unexpired lease of nonresidential real estate.

The Debtor presented testimony and other evidence at the emergency hearing. One oral objection to the motion and application was presented on behalf of Whirlpool Financial Corporation ("Whirlpool"), the holder of the largest secured claim in this case. Counsel for Whirlpool conducted cross-examination of the Debtor's witness and presented oral argument in opposition to the Debtor's requests. The United States Trustee appeared by Counsel and presented certain objections in the form of a request that any order approving a sale contain certain conditions.

The Debtor's business is the retail sale of pianos, organs and related items from its single location in leased premises. After closing several other stores, and because of the loss of a franchise for a popular make of piano, the Debtor decided to conduct a going out of business sale from its remaining music store. On about August 6, 1997, the Debtor entered into a Promotional Agreement with Direct Connections to conduct the sale beginning on September 19, 1997 and concluding on October 13, 1997. The Debtor has argued that it believed that it had obtained the agreement of all secured creditors concerning the manner in which the pianos and organs were to be sold. Based on this agreement which included the GOB sale dates, the Debtor entered into a separate agreement with its landlord to vacate the leased premises by October 15, 1997. The Debtor is in default in its lease payments to the landlord. The GOB sale has been advertized in local newspapers. Personnel from Direct Connections have traveled to St. Louis to set up accommodations, conduct an inventory of the Debtor's property, and prepare the premises for an orderly sale and accounting of proceeds. The Debtor's witness testified that she expected that each piano and organ sold

1. On several documents filed in this case, the Debtor's name includes an apostrophe indicating the possessive form. Unless an amendment is submitted to the contrary, the Court files will continue to list the Debtor's name as it appeared on the Chapter 11 Petition, without an apostrophe.

during the GOB sale would produce a profit for the Debtor, and that no item would be sold for less than the Debtor's cost. The GOB sale has been registered with the Missouri Secretary of State as required by State law. The holders of valid liens are to be paid from the proceeds of the sale of particular items that are subject to such liens. Direct Connections is to be paid a percentage of gross sales as fees; a percentage of gross profits as a commission; and a percentage of the profit, if any, that may be available after all liens and other expenses have been satisfied.

The Debtor's witness testified further that if the GOB sale is not allowed to proceed as advertized, the net benefit to the estate would be adversely affected. The Debtor's Counsel argued that if the GOB sale is not authorized, the Debtor would likely convert the case to a case under Chapter 7, resulting in a liquidation value that would be less than the value that could be obtained through the GOB sale. The Debtor has argued further that it believed that all secured creditors had either agreed to or had not objected to the GOB sale until Whirlpool gave notice of its objections on September 16, 1997. The Chapter 11 Petition was filed on September 17, 1997 in part to stay the Whirlpool replevin action that was to take place on September 18, 1997. Whirlpool has argued that its position in this case is aggravated because the Debtor had allegedly sold Whirlpool collateral "out of trust". The approximate value of the Whirlpool collateral sold "out of trust" is $30,000.00.

A trustee or debtor in possession may sell other than in the ordinary course of business, property of the estate. 11 U.S.C. § 363(b)(1). The trustee or debtor in possession may sell cash collateral under Section 363(b)(1) if each entity that has an interest in such cash collateral consents, or the Court authorizes such sale. 11 U.S.C. § 363(c)(2). On the request of an entity that has an interest in property proposed to be sold by a trustee or a debtor in possession, the Court may prohibit or condition such sale as is necessary to provide adequate protection of the entity's interest. 11 U.S.C. § 363(e).

■ In the circumstances presented in this matter, the Court has determined that cause has been shown and that adequate notice has been given; that the previously scheduled date of the beginning of the sale requires that this hearing be denominated as the final hearing on the Debtor's motion to sell cash collateral consolidated with the hearing on the Whirlpool request for adequate protection and the Whirlpool objections to the sale. 11 U.S.C. § 363(e); Rules 2002(a)(2), 4001 and 6004. Federal Rules of Bankruptcy Procedure. The shortened notice period and the method of providing notice are justified in these circumstances. Delaying a final hearing for fifteen or twenty days is unnecessary because two-thirds of the GOB sale period will have taken place or will have been lost, before the Court would enter the determination that would allow or prohibit the sale.

■ The Court's considerations in this matter must include an attempt to balance the interests of several entities. Ultimately, the decision must be in the best interests of the estate. *See WBQ Partnership v. Commonwealth of Virginia*, 189 B.R. 97 (Bankr. E.D.Va.1995). It would appear that a sale by a going concern, even though conducted as a going out of business sale, would produce a more favorable result than a replevin action or a liquidation sale. In this case however, Whirlpool has claimed that its interests are secondarily protected by a lien on substantially all of the Debtor's property. This extra protection for the proceeds from the sales out of trust might be defeated if the proceeds from the GOB sale are not greater than the purchase money security interests in the other property that may enjoy a first priority ahead of the Whirlpool interests. The Court has determined that on balance, Whirlpool is more likely to receive a greater value from the Debtor if the collateral is sold through the GOB sale, than if it is permitted to otherwise foreclose under its security interests.

A sale of substantially all of a debtor's assets, when substantially all of the assets are cash collateral, two days after the commencement of the chapter 11 case, must be carefully scrutinized by the Court. In addi-

tion to a benefit to the estate, the Proponent of the sale must establish that the interests of secured creditors are adequately protected. The Debtor has not had sufficient time to obtain a detailed appraisal of its assets. Similarly, Whirlpool has not had sufficient time to provide copies of its documentation to support the extent of its liens. On balance, the testimony from the Debtor's witness has established that the interests of Whirlpool are adequately protected by the Chapter 11 going-out-of-business sale value of its collateral. Whirlpool's interests will be additionally protected by the conditions set out at the end of this Order.

The Court has determined further that it is more likely that creditors other than Whirlpool will receive a greater distribution on their claims if the assets are sold through the GOB sale. Therefore, on balance, the best interests of the estate will be served by granting the Debtor's requests subject to certain conditions. The Debtor's application to retain Direct Connections will be granted on the condition that Direct Connections obtain a bond adequate to protect the value of the assets and sales proceeds that may be under its control from time to time. The amount of the bond is to be agreed upon by the Parties.

The Debtor's motion to conduct a GOB sale free and clear of liens will be granted on the condition that no property other than the Debtor's property is to be included in the sale; and that all sale proceeds are to be deposited daily into an account at an authorized depository; and that the Debtor is to cause a report of sales to be delivered to Whirlpool not less frequently than weekly.

**IT IS ORDERED** that these matters are concluded; and

That the Debtor's motion is approved; and the Debtor is authorized to commence the going out of business sale on September 19, 1997 subject to the conditions and limitations set forth below; and that the objections of the United States Trustee and Whirlpool are overruled; and

That the Debtor's application is approved; and that Direct Connections, Inc. shall manage the sale pursuant to its agreement with the Debtor except as modified by this Order; and that Direct Connections shall, as rapidly as possible, post a surety bond in form satisfactory to the Office of the United States Trustee in the amount of $110,000; and that nothing herein shall limit the right of any party to request an increase or decease in the amount of the bond; and

That during the term of the liquidation sale, the Debtor and Direct Connections shall provide weekly reports on all sales and collections from the sale; and that copies of these reports shall be provided to the Office of the United States Trustee, Whirlpool and any other party requesting a copy; and

That all proceeds from the sale or from any accounts receivable shall be deposited in a debtor in possession account with an authorized depository, and Direct Connections shall be added as a cosigner on that account; and that no payments shall be made to any secured creditor or holder of an administrative expense claim without a subsequent order authorizing such payment; and

That any and all alleged security interests, liens, claims or charges shall attach to the proceeds of the sale; and that all issues with respect to the amount, validity or priority of any security interest or lien are expressly reserved; and that the sale of inventory is free and clear of liens pursuant to Section 363(f)(1) and (3); and that the protections in this Order provide adequate protection for the interests of Whirlpool, and there is no evidence of prejudice to Whirlpool arising from the sale; and

That no inventory subject to any alleged security interest shall be sold for less than the Debtor's cost; and that no property other than property belonging to the Debtor shall be included in the sale.